970

The People of the State of New York, Respondent, v James Chad Heath, Appellant. [853 NYS2d 400]—

Rose, J.

Following the savage beating and death of the victim, defendant was charged with two counts of murder in the second degree (felony murder and depraved indifference murder), manslaughter in the first degree, attempted robbery in the first degree and attempted kidnapping in the second degree. At the

ensuing jury trial, the People presented evidence that the victim and defendant had been traffickers of marihuana, and that defendant attacked the victim to recover a large quantity of the drug that defendant believed the victim had stolen from their enterprise. The jury found defendant not guilty of depraved indifference murder, but guilty of the remaining charges. County Court sentenced him to an aggregate term of 25 years to life in prison, and he now appeals.

Among defendant's many contentions is the claim that his convictions of attempted robbery and attempted kidnapping are not based upon legally sufficient evidence and, thus, the People failed to establish a predicate to felony murder (*see* Penal Law § 125.25 [3]). We disagree. There is evidence that after defendant became convinced that the victim had betrayed him by stealing their inventory, he plotted with an accomplice to forcibly either retake the marihuana or, if the victim had already sold it, the proceeds. Two witnesses testified that they overheard defendant express his intention to force the victim to give up the marihuana or the proceeds. The accomplice testified that he had agreed to aid defendant in this plan and, to that end, he met with the victim and defendant at his trailer, where defendant sucker-punched the victim in the face. The accomplice related that this blow caused the victim to hit his head and fall to the floor, and that defendant then repeatedly punched the victim in the face and mouth, kicked him while he was down and smashed his head into the floor for 10 to 15 minutes. His testimony and the forensic evidence further showed that defendant's actions rendered the victim immobile, defendant attempted to wrap duct tape around the victim's head, and defendant and the accomplice then placed the unconscious victim under a comforter on the back seat of his own car. Defendant ultimately drove the victim, while apparently still alive, to a hospital parking lot in a neighboring county where defendant abandoned the car. The victim's frozen body was discovered six days later.

From this evidence and the attendant circumstances, the jury could have reasonably inferred that defendant attempted to forcibly take drugs or money from the victim and caused serious physical injury in the course of that attempt (*see* Penal Law §§ 110.00, 160.15 [1]; *People v Gajadhar*, 38 AD3d 127, 136 [2007], *affd* 9 NY3d 438 [2007]; *People v Ricco*, 11 AD3d 343, 344 [2004], *lv denied* 4 NY3d 835 [2005]). Similarly, as to the charge of attempted kidnapping, the jury could have reasonably inferred that defendant attempted to "restrain [the victim] with intent to prevent his liberation by either (a) secreting or hold-

ing him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force'' (Penal Law § 135.00 [2]; *see People v Linderberry*, 222 AD2d 731, 734 [1995], *lv denied* 87 NY2d 975 [1996]; *People v Carter*, 263 AD2d 958, 958-959 [1999], *lv denied* 94 NY2d 820 [1999]; *People v Salimi*, 159 AD2d 658, 658-659 [1990], *lv denied* 76 NY2d 742 [1990]). Inasmuch as both predicate felonies are supported by legally sufficient evidence, and the victim's death clearly resulted in the course of those crimes (*see* Penal Law § 125.25 [3]), defendant's conviction for felony murder also is supported by legally sufficient evidence. Further, after viewing the evidence in a neutral light and according deference to the jury's credibility determinations (*see People v Bleakley*, 69 NY2d 490, 495 [1987]), we find that defendant's convictions are not against the weight of the evidence.

Defendant also contends that County Court abused its discretion in denying his application for permission to file a late notice of intent to offer a psychiatric defense (*see* CPL 250.10 [2]). This application was made immediately after learning that the accomplice had accepted a plea bargain and agreed to testify against defendant, but only six days before trial was to begin. In our view, County Court properly weighed the potential prejudice to the prosecution against defendant's right to present his case (*see e.g. People v LeFebvre*, 45 AD3d 1175, 1176 [2007]). While preclusion is a drastic remedy, the record supports the court's ruling that the defense's last-minute change of strategy did not constitute good cause and would unfairly prejudice the People. At the hearing on defendant's application, defense counsel acknowledged that he had been aware of defendant's mental health history from the inception of the case. He also ''confirmed that the subject of a psychiatric defense was previously discussed . . . and [that he] made a strategic decision not to utilize that defense. This alone established a lack of good cause, sufficient to deny the . . . motion'' (*People v Perry*, 31 AD3d 814, 816 [2006], *lv denied* 7 NY3d 869 [2006] [citations omitted]; *see People v Hill*, 4 NY3d 876, 877 [2005]). Nor can we agree with defendant's current claim that it would have been irresponsible to assert a psychiatric defense before the accomplice agreed to testify. The theory of the People's case did not change, and counsel was aware from the beginning that there was an eyewitness who would likely testify for the prosecution if a plea bargain were struck.

Nor are we persuaded that County Court permitted the People's forensic pathologist to testify as to defendant's mental state. The admissibility and scope of expert testimony are com-

mitted to the sound discretion of the trial court (*see People v Cronin*, 60 NY2d 430, 433 [1983]; *People v Wallis*, 24 AD3d 1029, 1032 [2005], *lv denied* 6 NY3d 854 [2006]). Here, the pathologist opined that "the injuries to the face and head of this victim were a personal attack on the victim" and that the injury pattern did not indicate "a knockdown drag-out brawl, with arms flinging [but rather] was designed to humiliate and injure the face of the victim in particular." We find no fault with County Court's view that this testimony was offered to explain "the nature of the attack, a subject well within [the pathologist's] area of competence, and not . . . defendant's state of mind" (*People v Smith*, 59 NY2d 156, 168 [1983]; *see People v Kinitsky*, 166 AD2d 456, 457 [1990], *lv denied* 77 NY2d 840 [1991]).

On the other hand, it was error to allow the pathologist to also opine that the death was a homicide, since "[s]uch characterization improperly invaded the province of the jury" (*People v Odell*, 26 AD3d 527, 529 [2006], *lv denied* 7 NY3d 760 [2006]; *see People v Langlois*, 17 AD3d 772, 774 [2005]). However, defendant failed to object to this testimony when it was offered (*see People v Odell*, 26 AD3d at 529) and, in any event, the error was harmless in light of the overwhelming evidence of defendant's guilt (*see People v Langlois*, 17 AD3d at 774).

Next, County Court properly refused to compel another accomplice, defendant's girlfriend at the time of the murder, to testify for him despite her expressed intention to invoke her 5th Amendment privilege against self-incrimination. Although she pleaded guilty to the crime of tampering with physical evidence (*see* Penal Law § 215.40) for her conduct on the day of the victim's death and this plea would preclude further incrimination as to that day, defense counsel indicated that he would seek to elicit testimony from her regarding other topics and other dates. Thus, her testimony could have constituted evidence of other criminal activity, such as hindering prosecution by helping defendant avoid apprehension (*see* Penal Law § 205.60; *People v Coscia*, 279 AD2d 352, 352 [2001]; *see generally Hoffman v United States*, 341 US 479, 486-487 [1951]). As for defendant's request for a missing witness charge with respect to her, he did not show that the People failed to call a witness who was available, under their control and who would be expected to testify in the People's favor (*see People v Keen*, 94 NY2d 533, 539 [2000]; *People v Pereau*, 45 AD3d 978, 981 [2007], *lv denied* 9 NY3d 1037 [2008]).

In reviewing defendant's contention in his pro se brief that

he was deprived of the right to the effective assistance of counsel, we need only note that defendant "failed to show the absence of a strategic or other legitimate explanation for what he contends was counsel's failure" (*People v Carralero*, 9 AD3d 790, 792 [2004], *lv denied* 4 NY3d 742 [2004]; *see People v Garcia*, 75 NY2d 973, 974 [1990]; *People v Van Ness*, 43 AD3d 553, 555-556 [2007], *lv denied* 9 NY3d 965 [2007]). Further, counsel's effectiveness is clearly illustrated by his success in obtaining an acquittal on the charge of depraved indifference murder (*see People v Lewis*, 46 AD3d 943, 947 [2007]).

We have considered defendant's remaining arguments, including those made in his pro se brief, and find them to be, in most cases, unpreserved and, in all cases, lacking in merit.

Cardona, P.J., Peters, Carpinello and Malone Jr., JJ., concur. Ordered that the judgment is affirmed.